# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **QUANTAS HEALTHCARE MANAGEMENT, LLC** | |
| **Plaintiff,** | Case No. <u>3:23-CV-891</u> |
| **v.** | |
| **SUN CITY EMERGENCY ROOM, LLC; and SUN CITY WEST EMERGENCY ROOM, LLC** | |
| **Defendants.** | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Now comes Plaintiff Quantas Healthcare Management, LLC ("Quantas Healthcare" or "Plaintiff") and files this Original Complaint and Application for Temporary Restraining Order and a Preliminary Injunction against Defendants Sun City Emergency Room, LLC and Sun City West Emergency Room, LLC ("Sun City" or "Defendants") all arising from the Defendants' unauthorized use of Plaintiff's marks in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' emergency medical services. In support thereof, Plaintiff would show the Court as follows:

## PARTIES

1.      Plaintiff Quantas Healthcare is a limited liability company formed under the laws of Texas with a principal place of business at 5150 Lemmon Avenue, Suite 108, Dallas, Texas 75209.

2.      Defendant Sun City Emergency Room, LLC is a limited liability company formed under the laws of Texas with a principal place of business at 3821 Joe Battle Blvd., El Paso, Texas 79936.

3.      Defendant Sun City West Emergency Room, LLC is a limited liability company formed under the laws of Texas with a principal place of business at 351 E Redd Rd., El Paso, Texas 79932.

## VENUE AND JURISDICTION

4.      The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. In addition, the Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), 1121 and 28 U.S.C. § 1338(a).

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) because all or a substantial part of the events giving rise to this action occurred within this district and division, and because Sun City are subject to personal jurisdiction in this district and division because they maintain sufficient minimum contacts with this district and division to submit themselves to personal jurisdiction here.

6.      Venue is also proper under the exclusive venue clause of the Management Services Agreement ("MSA") with Quantas Healthcare signed January 1, 2018.

## BACKGROUND FACTS

7.      Plaintiff Quantas Healthcare is a healthcare service company that provides administrative management and marketing services to stand-alone emergency rooms in Texas. This is often times referred to as a Management Services Organization or MSO.

8.      In general, an MSO provides non-clinical services to medical practices, ambulatory care facilities or other healthcare providers. Services provided by an MSO like Quantas Healthcare include the following:

a.   Billing and Collection;

b.   Accounts Payable;

c.   Overall Revenue Cycle Management;

d.   Payer Negotiations and Credentialing;

e.   Employment of Non-Clinical Staff;

f.   IT Services;

g.   C-Suite Administrative Services;

h.   Human Resources;

i.   Marketing;

j.   Space Rental;

k.   Equipment Rental; and

l.   Drug and Durable Medical Equipment Supply Chain Services

9.      MSOs have been utilized in the medical industry for many years. Indeed, MSOs like Quants Healthcare provide several benefits to the medical industry, including:

a.   providing specified medical practice management and administrative support services such as billing/collections, provision of Electronic Health Records ("EHR"), payer credentialing, employment and supervision of non-clinical staff, HR, and operational services;

b.   assuming the burden of purchasing tangible assets of the practice (e.g., space, equipment, etc.), which are then leased back to the practice;

c.  developing group purchasing, malpractice discounts, data aggregation opportunities, and helping the practice to achieve economies of scale not otherwise available to a solo, small, or even medium-sized practice; and

d.  alleviating the administrative burdens of operating a medical practice, allowing clinicians to focus on patient care.

10.    The business relationship between an MSO and the medical practices or facilities is formalized via an MSA, which sets for the specific duties and responsibilities of the parties.

**<u>Quantas Healthcare's Strong and Famous Trademarks</u>**

11.    Quantas Healthcare is the owner of the valid and subsising United States Trademark Registration No. 6,693,933 on the Principal Register in the United States Patent and Trademark Office for the word mark SUN CITY EMERGENCY ROOM.  Attached as Exhibit A-1 is a true and correct copy of the registration certificate for Plaintiff's United States Trademark Registration No. 6,693,933, which was issued by the United States Patent and Trademark Office on April 5, 2022.  The first use of this mark was in 2016.

12.    Quantas Healthcare is the owner of the valid and subsising United States Trademark Registration No. 5,446,552 on the Principal Register in the United States Patent and Trademark Office for the design mark SUN CITY EMERGENCY ROOM, which is set forth below:



13.    Quantas Healthcare's Registration No. 5,446,552 has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Attached as Exhibit A-2 is a true

and correct copy of the registration certificate for Plaintiff's United States Trademark Registration No. 5,446,552, which was issued by the United States Patent and Trademark Office on April 17, 2018. The first use of this mark was in 2016, (hereinafter, Registration Nos. 6,693,933 and 5,446,552 are referred to as the "Marks" or "Trademarks").

14.     Quantas Healthcare is also the owner and operator of the URLs SunCityER.com, SunCityEastER.com, and SunCityWestER.com (the "Sun City URLs"), which use the Marks.

15.     Quantas Healthcare's exclusive ownership of the Marks and the Sun City URLs was known by the Defendants and the public. Indeed, a simple search for the Marks on United States Patent and Trademark Office's Trademark Electronic Search System (TESS) shows that Quantas Healthcare registered for, and is the owner of, the Marks. TESS is a free, publicly available search engine that allows persons to search the USPTO's database of registered trademarks and prior pending applications. Documents on TESS show Quantas Healthcare registered for, and is the owner of, the Marks.

16.     Through its website, Quantas Healthcare advertises and promotes the services of its licensees under the Marks.

17.     Quantas Healthcare has used the Marks in commerce continuously since 2018 in connection with the offering, sale, advertising, and promotion of emergency medical services in the nature of emergency medical clinics, urgent care services, and radiology services. Below are photographs and representative samples of materials showing Plaintiff's use of the Marks in connection with emergency medical services in the nature of emergency medical clinics, urgent care services, and radiology services.
















18.     Quantas Healthcare has extensively advertised and promoted the emergency and medical care services using the Sun City Marks and patients, consumers, doctors, and medical professionals have come to recognize the Sun City Marks as being associated with emergency and medical care services.  The strength of the Sun City Marks and the goodwill are valuable assets owned by Quantas Healthcare.

19.     Quantas Healthcare has used the marks in commerce in the State of Texas continuously and extensively since 2018 in connection with offering, providing, marketing, advertising, and promotion of The Facilities and associated emergency medical care services.

20.     As a result of its widespread, continuous, and exclusive use of the Sun City Marks to identify its emergency and medical care services, Quantas Healthcare owns valid federal statutory and common law rights to the Sun City Marks. As a result, the marks are distinctive to the consuming public and the Quantas Healthcare's trade.

21.     Quantas Healthcare has prominently displayed the Sun City Marks on indoor and outdoor signs, Internet websites, television advertising, direct mail advertising, patient documentation and billing documents, and social media, much of which is accessible throughout the United States.  Quantas Healthcare has acquired a valuable reputation and goodwill among the public as a result of such customer association with the Sun City Marks.  The Sun City Marks are recognized as being synonymous with high standards of excellence, quality, and integrity.

22.     As shown above, Quantas Healthcare has expended substantial time and resources marketing, advertising, and promoting the Marks.  Substantial money has also been spent in marketing, advertising, and promoting the Marks.  Since 2018,  Quantas Healthcare estimates that more than four million US Dollars ($4,000,000) has been spent on the marketing, advertising, and promotion of the Marks.  The resulting good goodwill from this investment of time, money and resources inures exclusively to Quantas Healthcare under the Licensing Agreements.

23.     Quantas Healthcare, through its licensees, provides and sells the emergency medical care services under the Marks in the facilities in El Paso, Texas.

24.     Quantas Healthcare, through its licensees, offers and sells the emergency medical care services to persons in need of emergency medical treatment.

25.     As a result of Plaintiff's expenditures and efforts, the Marks have come to signify the high quality of the services designated by the Marks, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Quantas Healthcare.

26.     Plaintiff's Marks and the services offered thereunder have received significant coverage in various media, including local television station KFOX 14.[1]

---

[1] See, e.g., https://kfoxtv.com/daytime-at-9/doctor-shares-how-easy-it-is-to-use-insurance-at-sun-city-er;
https://kfoxtv.com/daytime-at-9/sun-city-emergency-room-locations-have-cutting-edge-equipment-minus-the-hospital-wait;
https://kfoxtv.com/daytime-at-9/pediatrics-a-specialty-for-doctors-at-the-sun-city-emergency-room

27.     For example, on March 19, 2019, Dr. Phelan was featured on KFOX TV to discuss Sun City Emergency Room and the services provided at the facility.  Below is a true and correct photographic depiction showing the promotion of Plaintiff's Mark on this news broadcast.



28.     On January 22, 2019, Dr. Phelan was featured on KFOX TV to discuss Sun City Emergency Room, the cutting-edge equipment at the facility, and the services provided at the facility.  Below is a true and correct photographic depiction showing the promotion of Plaintiff's Mark on this news broadcast.



29.    On January 22, 2019, Dr. Phelan was featured on KFOX TV to discuss Sun City Emergency Room and the pediatric services provided at the facility.  Below is a true and correct photographic depiction showing the promotion of Plaintiff's Mark on this news broadcast.



**Defendants Contract for Quantas Healthcare's MSO Services and Marks**

30.     Defendants Sun City Emergency Room, LLC and Sun City West Emergency Room, LLC own and operate free standing emergency rooms in El Paso, Texas. (the "Facilities").

31.     The Facilities provide treatment to patients presenting with emergent medical conditions.  Pursuant to Texas Law, the Facilities have full capacity to treat patients with the same standard of care as an emergency room attached to a hospital.  Quantas Healthcare licenses to Sun City the use of certain trademarks, logos, service marks and copyrighted materials owned by Quantas Healthcare.

32.     Dr. Phelan was a founder and minority owner of Sun City until his wrongful expulsion from the companies by the majority members on April 25, 2023.  From its founding and up until February 18, 2023, Dr. Phelan was the Managing Member and Chief Executive Officer of Sun City.  Under his supervision and leadership, he expanded the business from a startup to one with nearly $10M in revenue a year.  Indeed, prior to his expulsion and up until only recently, the majority members of the companies played no role in management and left those decisions to Dr. Phelan.  Prior to wrongful expulsion on April 25, 2023, the majority members never expressed in writing or orally that they believed Dr. Phelan committed wrongful conduct that would justify expulsion.  To the contrary, the majority members earned millions of dollars from the companies managed by Dr. Phelan and repeatedly praised his leadership and business decisions over the years.[2]

33.     Quantas Healthcare was created in 2017 to provide services to Sun City, the Facilities and three freestanding emergency rooms in Dallas. Quantas Healthcare and Sun City entered into an MSA on January 1, 2018, where Quantas Healthcare agreed to provide

---

[2] The purported "reasons" for Dr. Phelan's expulsion were merely pretextual, intended to coerce Quantas Healthcare into assigning the Marks to the Defendants.

administrative management services to Sun City and the Facilities.  After entering into the MSA, and until recently, Quantas Healthcare began to provide the MSO services identified above to the Defendants.

34.     On January 29, 2018, Sun City assigned all right, title, and interest in the Marks to Quantas Healthcare. Attached as Exhibit A-3 is a true and correct copy of the Trademark Assignment.

35.     Quantas Healthcare and Sun City also entered into Trademark License Agreements (the "License Agreement") on March 1, 2018. Attached as Exhibit A-4 is a true and correct copy of the License Agreement.

36.     After entering into the License Agreement, Defendants began to use the Sun City Marks pursuant to the license agreement.

37.     Defendants agreed to certain terms under the License Agreement, including:

a.   That during the term of the License Agreement and thereafter, Quantas Healthcare retained exclusive title to and ownership of the Marks;

b.   The license was terminable immediately upon written notice;

c.   Not to attack Quantas Healthcare's title to the Marks;

d.   Not to attack any of Quantas Healthcare's rights to the Marks;

e.   Not to misuse the Marks;

f.   Not to take any action that would tend to destroy or diminish Quantas Healthcare's goodwill in the Marks; and

g.   All uses of the Marks inured to the benefit of Quantas Healthcare.

## DEFENDANTS UNLAWFUL ACTS

38.     On March 20, 2023, Defendants Sun City gave 30 days notice of termination of their MSA with Quantas Healthcare.

39.     On April 4, Quantas Healthcare sent written notice of termination of all trademark License Agreements with Sun City and the Facilities, effective April 19, 2023. In the notice, Quantas Healthcare made it clear to Defendants that Quantas Healthcare is the owner of the Sun City Marks pursuant to the License Agreements. Attached as Exhibit A-5 is a true and correct copy of the termination. Thus, after April 19, 2023, Defendants had no right to use the Marks in connection with the Facilities or otherwise.

40.     Without Quantas Healthcare's authorization and beginning after Plaintiff acquired protectable exclusive rights in the Marks and terminated the License Agreements, Defendants adopted and began using a mark identical to Quantas Healthcare's registered and protected Marks (hereinafter, the "Infringing Mark") in US commerce.

41.     Specifically, Quantas Healthcare discovered that Defendants are promoting, advertising, selling, and/or offering emergency and medical care services bearing the Sun City Marks that are owned and registered by Quantas Healthcare. As shown below, Defendants are using the Infringing Mark on the Facilities and inside the Facilities after being served Notice of Termination of the License Agreements and after the effective April 19, 2023, date.  Shown below are true and correct photographic depictions showing Defendant's use of the Infringing Mark on the Facilities and inside the Facilities after April 19, 2023.







42.     Defendants' brazen infringement did not stop with the infringement on the Facilities and inside the Facilities. Specifically, on April 5, 2023, Defendants registered or caused to be registered the domain, https://www.suncityer.org, with the registrar GoDaddy.com, LLC (the "Registrar").  Although the WHOIS record does not disclose the identity of the domain name registrant, based on the information below and upon information and belief, Defendants are currently the registrant of the Domain Name. Attached hereto as Exhibit A-6 is a true and correct copy of the WHOIS record for the Domain Name as of April 24, 2023.

43.     This Domain Name is identical or confusingly similar to Plaintiff's Marks, which was distinctive and famous when Defendant registered the Domain Name. Defendants were aware of Plaintiff's rights in the Marks when they selected and registered the Domain Name, and knowingly and intentionally registered the Domain Name because of its similarity to the Mark. Defendants' registration is in direct violation of the License Agreement and the terms Defendants agreed to.

44.     Defendants have no rights in or to any trademark or name that is similar to the Domain Name and is not known by any name that is similar to the Domain Name. Defendants have no legitimate purpose for registering the Domain Name and did so only with bad faith intent to profit from the goodwill in the Mark and from use of the Domain Name as set out herein.

45.     Defendants then copied all of the copyrighted content from Quantas Healthcare's websites and are now publishing this infringing contact on this URL. The registration of the domain with Quantas Healthcare's Mark was without permission or consent.

46.     Without Plaintiff's authorization and beginning after Plaintiff acquired protectable exclusive rights in the Mark, Defendants posted a live website at the Domain Name ("Defendants' Website"). Defendant's Website remains active as of the filing of this complaint.  Shown below

are true and correct photographic depictions showing Defendant's use of the Infringing Mark on
the Defendants' Website.











CT Scans

### On-Site Diagnostic Imaging Available

At El Paso Emergency Room, we understand the importance of being an emergency center with diagnostic imaging capabilities in order offer a superior level of care and convenience. With this in mind, we have onsite diagnostic imaging to help our doctors provide you with an accurate diagnosis. El Paso Emergency Room is a freestanding emergency room with onsite digital imaging capabilities, including CT scans, X-rays, and ultrasounds. We are proud to bring a superior level of emergency care to the El Paso area.

### How do CT Scans Help Our Doctors?

CT scans are an essential diagnostic tool that helps our doctors diagnose and treat any emergency condition you may have. They can show soft tissues, bones, blood vessels, and more. As a result, our doctors can identify what may be causing your emergency. Typically, CT scans help identify many medical conditions, including:





Ultrasound

### A Major and Minor Emergency Diagnostic Aid

Ultrasounds have become synonymous with pregnancy and fetal development. However, an ultrasound has many uses besides monitoring a baby's health. It can also be used to diagnose other medical conditions where an internal picture of the body is needed. At El Paso Emergency Room, our doctors use ultrasounds for help diagnosing the cause of a major or minor emergency. This noninvasive procedure can show abnormalities and other causes of abdominal pain, joint pain, and more.

### An Ultrasound is an Important Diagnostic Tool

When you visit El Paso Emergency Room, you will find a convenient 24-hour emergency clinic that makes your medical care a priority. With this in mind, you will be provided with superior care that immediately will take account of all your symptoms. Typically, the most common condition that calls for the use of an ultrasound is abdominal pain. Consequently, abdominal pain can point to many different conditions, so doctors use ultrasounds to narrow down your diagnosis. In addition to abdominal pain, an ultrasound may be used in order to get a better picture the following conditions:

- Bowel obstructions
- Ovarian cysts
- Pregnancy
- Stomach pain
- Joint pain



### Contact El Paso Emergency Room Today

Getting an ultrasound is non-invasive, pain-free, and quick. At El Paso Emergency Room, we offer onsite diagnostic imaging including ultrasounds, CT scans, and X-rays. Additionally, we have a fully trained radiology staff who can read your results quickly. As a result, our services offer quick results and effective treatment. We are bringing a higher quality of care and convenience to El Paso. Contact us today for more information on our advanced digital imaging suite.



X-Ray

### An Emergency Center with Onsite Diagnostic Imaging

X-rays are one of the most important and common diagnostic tools at hospitals, emergency rooms, and other urgent care facilities. Sometimes, when you fracture or break a bone, it is not always obvious. An X-ray is the easiest way for doctor's to see what is going on. Typically, in cases of trauma or accidents, an X-ray is essential for proper diagnosis. An emergency center like El Paso Emergency Room in El Paso offers onsite diagnostic imaging capabilities for our patients' convenience.

### X-ray is an Important Diagnostic Tool

There are a variety of conditions and symptoms that call for the use of X-rays. As a result, it is the most common diagnostic imaging tool doctors use. Generally, the most common use for an X-ray involves broken bones and fractures. They allow our doctors to see what type of fracture you suffer from. Broken bones can result in major complications if not you do not address them immediately. For example, if a broken bone sets incorrectly, a doctor may have to rebreak the bone in order for it to heal properly. Other conditions that use X-rays include back pain, joint pain,





All Posts



# The Differences Between an Urgent Care and the ER



Many people in El Paso who need medical care are uncertain of where to go. It can be easy to become confused about the differences between urgent care centers and freestanding emergency rooms. The confusion is understandable, but the differences are profound.  An urgent care center provides care for people who can't get in to see a doctor, but the care it provides may be more limited than what El Paso Emergency Room offers. A freestanding ER like El Paso Emergency Room, on the other hand, offers all the emergency services a traditional ER does without the hospital hassle. We provide comprehensive medical care to people in El Paso who are having a medical emergency, and can do more for patients than an urgent care center can.









47.    Defendants used the Domain Name, which is confusingly similar to Plaintiff's

Marks, to divert internet users looking for Plaintiff's Website to Defendants' Website. Defendants

used the Domain Name with bad faith intent to financially benefit by attracting consumers looking for services under Plaintiff's Marks.

48.     Because the Domain Name is confusingly similar to the Marks, and Defendants' Website promotes and depicts services that are identical and related to the services Plaintiff's licensees provide under the Marks, consumers are likely to be confused into thinking that Plaintiff authorized, approved, or is affiliated or connected with Defendants' Website and the services promoted on the site when that is no longer the case.

49.     Due to the similarity of the Domain Name and Plaintiff's Marks, consumers are likely to associate the Domain Name with Plaintiff's mark, impairing the distinctiveness of Plaintiff's Mark. Indeed, Defendants intended their use of a Domain Name so similar to Plaintiff's Marks to cause consumers to associate the Domain Name with Plaintiff's mark.

50.     At no time before or after Defendants registered the Domain Name did Defendants own any rights in a mark or name that is similar to the Domain Name or have any legitimate interest in using the Domain Name.

51.     Defendants' infringing actions also include their illegal attempt to gain access to Plaintiff's business page on Google.  Plaintiff owns several Google Business Profiles related to the Marks.  A Google Business Profile is a tool that allows trademark owners like Plaintiff to advertise their businesses on Google Search and Maps.  A Business Profile allow Plaintiff to connect with customers, post updates, list services, accept online appointments, and more. Plaintiff has owned its Google Business Profile related to the Marks for several years.

52.     On April 17, 2023, Defendants sent multiple requests to Google to "change" ownership of Plaintiff's Google Business Profile from Plaintiff to Defendants.  Below is a

photograph showing Defendants' attempt to impersonate Plaintiff and convince Google to change the account ownership.



53.     Defendants also sent requests to lower-level employees and Dr. Phelan seeking to access to Plaintiff's Google Business Profiles.

54.     When consumers, potential consumers, vendors, other healthcare providers, and third parties call to the Facilities, the Defendants are using the Marks when they answer the calls by presenting themselves as "Sun City" and "Sun City Emergency Room."

55.     The Defendants are also presenting patients and others with paperwork, forms, and documentation (including invoices) using the Marks.

56.     Defendants' acts alleged herein are willful, with the deliberate intent to trade on the goodwill of Plaintiff's Mark, cause confusion and deception online and in the marketplace, divert

internet users looking for Plaintiff's Website or the services of authorized licensees under the Marks to Defendant's Website.

57.     Despite having knowledge of ownership of the Sun City Marks and termination of the Licensing Agreements, Defendants are actively using, promoting, advertising, selling, and offering for sale emergency and medical care services with the Sun City Marks. The net effect of Defendants unlawful action will be confusion of consumers who believe that Defendants' services are associated with, and have been approved by Quantas Healthcare, when in fact, they are not.

58.     Defendants advertise their emergency and medical care services to the consuming public. In advertising their services, Defendants improperly and unlawfully use the Sun City Marks. The misappropriation of the Sun City Marks will cause irreparable harm to Quantas Healthcare.

59.     Defendants are using the Sun City Marks to make their websites and are selling and/or offering to sell emergency and medical care services. By Defendants' actions they are causing indivisible harm to Quantas Healthcare and the consuming public by (1) depriving Quantas Healthcare the ability to use their Sun City Marks and fairly compete in the marketplace; (2) causing an overall degradation of the value of the goodwill associated with the Sun City Marks owned by Quantas Healthcare; and (3) causing Quantas Healthcare to spend additional costs to protect and market its Sun City Marks to the consumers, for example, filing this Complaint.

60.     Defendants are conducting their infringing activities, at least, within the District. As a result, Defendants are defrauding Quantas Healthcare and members of the consuming public for Defendants own benefit.

61.     Defendants' use of the Sun City Marks in promotion, advertisement, sale and/or offering for sale of Defendants' services is without Quantas Healthcare's authorization or consent.

62.     Defendants are engaging in above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Quantas Healthcare's rights for the purpose of trading on the goodwill and reputation of Quantas Healthcare and its Sun City Marks.

63.     Defendants' infringing activities described above are likely to cause confusion, deception, and mistake in the minds of consumers, the public and the trade. Additionally, Defendants' wrongful use of the Sun City Marks is likely to create a false impression and deceive customers, the public and the trade into believing that there is a connection or association between Quantas Healthcare and Defendants when, in fact, there is not.

64.     Plaintiff Quantas Healthcare has no adequate remedy at law.

65.     Plaintiff Quantas Healthcare is suffering irreparable and indivisible injury and damages because of Defendants unauthorized and wrongful use of the Sun City Marks. If Defendants' infringing and unfair competitive activities described above are not preliminary and permanently enjoined by this Court, Plaintiff Quantas Healthcare and the consuming public will continue to be harmed.

66.     Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law. For example, Defendants' use of the Marks in connection with its website is likely to damage Quantas' reputation and goodwill because the website is not compliant with state or federal law.

67.     Quantas Healthcare has retained the undersigned counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for such representation.

68.     Defendant's acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's Marks, cause confusion and deception in the marketplace.

## CAUSES OF ACTION

### I.   Trademark Infringement

69.     Quantas Healthcare hereby adopts and re-alleges the allegations set forth in Paragraph 1 through 64 above.

70.     This is an action for trademark infringement against Defendants based on their use of Quantas Healthcare's Sun City Marks in commerce in connection with the promotion, advertisement, sale and/or offering for sale of Defendants' emergency and medical care services.

71.     Specifically, Defendants are promoting, advertising selling, and/or offering for sale emergency and medical care services bearing the Sun City Marks. Defendants are continuously infringing and inducing other to infringe the Sun City Marks by using them to advertise, promote, and sell their emergency and medical care services.

72.     Defendants' infringing and unfair competitive activities are likely to cause, and upon information and belief, actually causing confusion, mistake, and deception among members of the trade and general consuming pubic as to the origin and quality of Defendants' emergency and medical care services which bear and are advertised using the Sun City Marks.

73.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Plaintiff Quantas Healthcare.

74.     Defendants' above-described illegal actions constitute infringement of the Sun City Marks in violation of Quantas Healthcare rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

75.     Plaintiff Quantas Healthcare suffers and will continue to suffer irreparable injury due to Defendants' misconduct described above if Defendants are not preliminary and permanently enjoined.

76.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## II.     Cyberpiracy Pursuant to Section 43(d) of the Lanham Act

77.     Quantas Healthcare hereby adopts and re-alleges the allegations set forth in Paragraph 1 through 72 above.

78.     Quantas Healthcare has been and still is the owner of the rights, title, and interest in and to the Sun City Marks.

79.     Defendants have acted with the bad faith intent to profit from the Sun City Marks and the goodwill associated with the Sun City Marks by registering a Domain Name that is identical or confusingly similar to or dilutive of the Sun City Marks.  Among other things, upon information and belief:

a.  Defendants registered the Domain Name, despite knowing that Defendants had no rights in any name or mark and was not known by any name that was referenced or reflected in the Domain Name;

b.  Defendants made no bona fide, non-infringing, or fair non-commercial use of the Domain Name;

c.  Defendants intended to divert consumers looking for services of Plaintiff's authorized licensees online to Defendants' Website by exploiting the confusing similarity of the Domain Name and the Marks for Defendants' commercial gain; and

d.  Defendants registered the Domain Name in direct violation of the License Agreements.

80.     Defendants have no intellectual property rights in or to the Sun City Marks.

81.     Defendants' actions constitute cyberpiracy in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1114.

82.     Defendants' conduct was done with knowledge of Quantas Healthcare's rights in and to the Sun City Marks and constitutes a willful violation of Quantas Healthcare's rights in the Sun City Marks. Defendants' conduct constitutes a reckless disregard for and willful blindness to Quantas Healthcare's rights.

83.     Defendants' misconduct is causing Quantas Healthcare damages and immediate and irreparable injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff unless enjoined by this Court. Quantas Healthcare has no adequate remedy at law.

84.     Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Name to Plaintiff.

85.     Plaintiff is further entitled to recover its damages and Defendants' profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiff is entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

86.     Plaintiff is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

### III.     Common Law Unfair Competition

87.     Plaintiff Quantas Healthcare adopts and re-alleges the allegations set forth in Paragraph 1 through 82 above.

88.     By promoting, advertising, selling and/or offering for sell emergency and medical care services bearing the Sun City Marks that are owned by Quantas Healthcare, Defendants have

engaged in unfair competition including unlawful, unfair, and fraudulent business practices in violation of the common law of the state of Texas.

89.     Specifically, Defendants are promoting, advertising, selling and/or offering to sell emergency and medical care services bearing the Sun City Marks to unfairly compete with Quantas Healthcare in the same trade.

90.     Defendants' infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' services by their use of the Sun City Marks.

91.     Plaintiff Quantas Healthcare has no adequate remedy at law and is suffering irreparable injury as a result of the Defendants' unlawful actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Quantas Healthcare respectfully asks for judgment in their favor and against Defendants Sun City Emergency Room, LLC and Sun City West Emergency Room, LLC as follows:

a.     Judgment in favor of Plaintiff Quantas Healthcare on all causes of action;

b.     A judicial finding that this is an exceptional case, and that Quantas Healthcare is the prevailing party;

c.     An award of attorney fees and costs against Defendants Sun City Emergency Room, LLC, and Sun City West Emergency Room, LLC;

d.     Ordering Defendants to, within ten (10) days of the entry of final judgment, transfer to Plaintiff the registration of the Domain Name www.SunCityER.org and registrations of any other domain names owned or controlled by Defendant that are confusingly similar or dilutive of Plaintiff's Marks (collectively, the "Prohibited Domain Names").

e.    Ordering that the Registrar, upon Plaintiff's request, transfer registration of the Prohibited Domain Names to Plaintiff.

f.    Ordering Defendants to cease use of the Marks on all indoor and outdoor signage, television and radio advertising, marketing materials, customer documentation, and billing communications with customers or insurers.

g.    Granting an injunction temporarily, preliminarily, and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   a.    providing, selling, marketing, advertising, promoting, or authorizing any third party to sell, market, advertise, or promote Defendants' services bearing Plaintiff's Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Marks;

   b.    engaging in any activity that infringes Plaintiff's rights in its Marks;

   c.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating Plaintiff's Marks or any other mark that infringes or is likely to be confused with Plaintiff's Marks, or any goods or services of Plaintiff, or Plaintiff as their source;

   d.    owning, registering, trafficking in, or otherwise using any of the Prohibited Domain Names;

   e.    engaging in any activity constituting unfair competition with Plaintiff;

     f.   making or displaying any statement, representation, or other indication that is likely to lead the public or the trade to believe that (i) Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) services provided by Plaintiff's licensees are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

     g.   using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

     h.   aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

     h.   Granting such other and further relief as the Court may deem just and proper to prevent the public and trade from deriving the false impression that any website operated by or any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's licensees' services.

     i.   Ordering, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after issuance of an injunction in this action, or such extended period as the court may direct, a report

in writing under oath setting forth in detail the manner and form in which Defendants has complied therewith.

       j.    Awarding Plaintiff, upon Plaintiff's election, either:

           a.   an amount up to three times the amount of its actual damages and all of Defendants' profits realized by its wrongful acts alleged herein, enhanced as appropriate to compensate Plaintiff for the damages caused thereby, in accordance with Section 35(a) and (b) of the Lanham Act (15 U.S.C. § 1117(a), (b)); or

           b.   maximum statutory damages in the amount of $100,0000 for Defendants' violation of Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)), in accordance with Section 35(d) of the Lanham Act (15 U.S.C. § 1117(d)).

k.  Awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

l.  Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

m.  Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

n.  Awarding such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Quantas Healthcare requests a trial by jury on all issues triable of right by a jury.

## APPLICATION FOR TEMPORARY
## <u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

1.      Quantas Healthcare adopts and re-alleges all the allegations set forth above.

2.      Unless enjoined, Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by Plaintiff's Trademark.

3.      Plaintiff seeks a temporary restraining order and a preliminary injunction pursuant to Federal Rule of Civil Procedure Rule 65.  In particular, Plaintiff requests this Court to enjoin the Defendants from,  a). Defendants to immediately cease and desist the marketing, promoting, advertising, selling and/or offer to sell of any emergency and medical care services using the Sun City Marks, including but not limited to use of the Sun City Marks on all indoor and outdoor signage, television and radio advertising, marketing materials, customer documentation, and billing communications with customers or insurers; b). Defendants to immediately cease and desist from using or publishing content to the Internet from the Domain Name; and c). prohibited from registering any domain name that is identical or confusingly similar to Sun City Marks.

4.      The requirements for showing entitlement to a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 are identical. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); Braddick v. Acosta, 2019 WL 201845, at *2 (N.D. Tex. Jan. 15, 2019).

5.      The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a).  The court can issue both preliminary and permanent injunctions to stop acts of trademark infringement.  15 U.S.C. § 1116(a) (c)(5). Injunctive relief is an important remedy in infringement cases like this one because monetary relief

is often an inadequate remedy for the resulting harm to the mark owner's brand from continued use by an infringer.  This is especially true for preliminary injunctive relief, where the injunction is entered to preserve the status quo pending a final determination of the case on the merits.

6.      To obtain a temporary restraining order and a preliminary injunction, Plaintiff must show:

      a.   A substantial likelihood of success on the merits;

      b.   A substantial threat that irreparable harm if the injunction is not granted;

      c.   That the threatened injury outweighs the threatened harm to the Defendants; and

      d.   The injunction will not disserve the public interest.

*Opulent Life Church v. City of Holly Springs, Miss*., 697 F.3d 279, 288 (5th Cir. 2012); *Tex. Midstream Gas Serv., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010).

**A.     Substantial likelihood that Plaintiff will Prevail on the Merits**

7.      A defendant is liable for trademark counterfeiting/infringement under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, a plaintiff must show that its mark is protected under the Lanham Act. Second, a plaintiff must show that the defendant's use of its trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship."  *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc*., 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc*., 783 F.3d 527, 536 (5th Cir. 2015)).

8.      Quantas Healthcare is the owner of the valid and subsisting United States Trademark Registration No. 6,693,933 on the Principal Register in the United States Patent and Trademark Office for the word mark SUN CITY EMERGENCY ROOM and Registration No. 5,446,552 on the Principal Register in the United States Patent and Trademark Office for the design mark SUN CITY EMERGENCY ROOM, *see* Declaration of Robert Phelan at ¶¶ 8-10 ("Phelan Dec.) a true and correct copy of which is attached as Exhibit A, which is set forth below:



9.      Quantas Healthcare's Registration No. 5,446,552 has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

10.     Plaintiff satisfies the first element of its Lanham Act claim.

11.     To evaluate whether there is a likelihood of confusion, our circuit uses a non-exhaustive list of factors known as the "digits of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). The initially identified digits are: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 225 (5th Cir. 1995) (quoting *Marathon Mfg. Co. v. Enerlite Prods*., 767 F.2d 214, 217 (5th Cir. 1985)). Besides being simply examples, those eight digits also are fact-specific and flexible, and "[n]o digit is dispositive." *Id.*

12.     The Marks are strong and .  The stronger the mark, the greater the likelihood that consumers will be confused and the more protection it receives.  *Elvis Presley Enters., Inc. v.*

*Capece*, 141 F.3d 188, 201 (5ᵗʰ Cir. 1998).  A mark's strength is based on: its classification on a spectrum of inherent distinctiveness: whether the mark is generic (unprotectable), descriptive (protectable only with secondary meaning), suggestive, arbitrary, or fanciful; and its standing in the marketplace.  Am. *Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 330-31 (5ᵗʰ Cir. 2008). Here, the Marks are at least suggestive, if not arbitrary.  That is, the Mark suggest an attribute of a good or service without describing it.  *Xtreme Lashes, LLC v. Xtended Beauty, Inc*., 576 F.3d 221, 227 (5th Cir. 2009).  Further, the dominant portion of the Marks, SUN CITY, uses ordinary words that do not suggest or describe the services involved.  *Union Nat'l Bank of Laredo v. Union Nat'l Bank of Austin*, 909 F.2d 839, 845 (5th Cir. 1990).  Thus, the Marks are strong and entitled to protection.  Further, Registration No. 5,446,552 has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  The first digit supports a finding of likelihood of confusion.

13.    The Defendants' Infringing Mark is identical to the Marks.  As such, the second digit supports a finding of likelihood of confusion.

14.    The Defendants are offering the services that Plaintiff's licensees offer under the Marks.  As such, the third digit supports a finding of likelihood of confusion.

15.    The purchasers of Defendants' services are the same services that Plaintiff's licensees offer under the Marks.  As such, the fourth digit supports a finding of likelihood of confusion.

16.    The fifth and sixth digits also support a finding of likelihood of confusion as the parties use similar advertising and the Defendants' intent is willful.  On April 4, Quantas Healthcare sent written notice of termination letter of all trademark License Agreements with Sun

City and the Facilities effective April 19, 2023. Thus, after April 19, 2023, Defendants had no right to use the Marks in connection with the Facilities or otherwise.  Phelan Dec. at ¶ 33.

17.     Without Quantas Healthcare's authorization and beginning after Plaintiff acquired protectable exclusive rights in the Marks and terminated the License Agreements, Defendants on April 20, 2023 adopted and began using a mark identical to Quantas Healthcare's registered and protected Marks (hereinafter, the "Infringing Mark") in US commerce.  Specifically, Quantas Healthcare discovered that Defendants are promoting, advertising, selling, and/or offering emergency and medical care services bearing the Sun City Marks that are owned and registered by Quantas Healthcare. As shown in the pictures above, Defendants are using the Infringing Mark on the Facilities and inside the Facilities after being served Notice of Termination of the License Agreements and after the effective April 19, 2023, date.  Phelan Dec. at  ¶¶ 34-35.

18.     Defendants have no rights in or to any trademark or name that is similar to the Marks. Defendants have no legitimate purpose for infringing the Marks and did so only with bad faith intent to profit from the goodwill in the Marks and Name as set out above.  Phelan Dec. at  ¶ 38.

19.     Defendants infringed Plaintiff's Mark when they registered or caused to be registered the domain, https://www.suncityer.org.  This Domain Name is identical or confusingly similar to Plaintiff's Marks, which was distinctive and famous when Defendant registered the Domain Name. Defendants were aware of Plaintiff's rights in the Marks when they selected and registered the Domain Name, and knowingly and intentionally registered the Domain Name because of its similarity to the Mark.  Defendants' registration is in direct violation of the License Agreement. Phelan Dec. at  ¶ 37.

20.     Defendants have no rights in or to any trademark or name that is similar to the Domain Name and is not known by any name that is similar to the Domain Name. Defendants have no legitimate purpose for registering the Domain Name and did so only with bad faith intent to profit from the goodwill in the Mark and from use of the Domain Name as set out herein.  Phelan Dec. at ¶ 38.

21.     Defendants then copied all of the copyrighted content from Quantas Healthcare's websites and are now publishing this infringing contact on this URL.  The registration of the domain with Quantas Healthcare's Mark was without permission or consent. Phelan Dec. at ¶¶ 39-40.

22.     Without Plaintiff's authorization and beginning after Plaintiff acquired protectable exclusive rights in the Mark, Defendants posted a live website at the Domain Name ("Defendants' Website").  Defendant's Website remains active as of the filing of this complaint.  Shown below are true and correct photographic depictions showing Defendant's use of the Infringing Mark on the Defendants' Website.  *Id.*

23.     Defendant's unauthorized use in commerce of the Infringing Mark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's services, and is likely to cause consumers to believe, contrary to fact, that Defendant's services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  Phelan Dec. at ¶¶ 50-59.

24.     Plaintiff satisfies the second element of its Lanham Act claim.

25.     Defendants' actions also constitute cyberpiracy in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1114.  Among other things:

      a.    Defendants registered the Domain Name, despite knowing that Defendants had no rights in any name or mark and was not known by any name that was referenced or reflected in the Domain Name;

      b.    Defendants made no bona fide, non-infringing, or fair non-commercial use of the Domain Name;

      c.    Defendants intended to divert consumers looking for services of Plaintiff's authorized licensees online to Defendants' Website by exploiting the confusing similarity of the Domain Name and the Marks for Defendants' commercial gain; and

      d.    Defendants registered the Domain Name in direct violation of the License Agreements. Phelan Dec. at  ¶¶ 36-44.

26.     The evidence shows that Defendants are offering and selling services using the Infringing Mark that is identical or Plaintiff's Marks.  Phelan Dec. at  ¶ 34.  Both Plaintiff's licensees and Defendants advertise and sell their products to consumers via the Internet and at stand-alone facilities.  Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing services offered under genuine Marks and Defendants' Infringing Mark. Phelan Dec. at  ¶ 44

27.     Defendants are intentionally seeking to induce consumers searching for genuine services offered by Plaintiff's licensees to purchase services under the Infringing Mark instead. Defendants advertise services with unauthorized versions of Plaintiff's Marks. There is compelling evidence that Defendants are attempting to "palm off" their services as authorized, licensees, or

originating from Plaintiff's Marks.  Thus, Plaintiff is likely to succeed in establishing a prima facie case of trademark infringement.

**B.     Quantas Healthcare has a Presumption of Irreparable Harm**

28.     The Trademark Modernization Act (TMA) amended the injunction language of the Lanham Act to codify the rebuttable presumption of irreparable harm on a finding of: (1) a likelihood of success on the merits, for a preliminary injunction or temporary restraining order; and (2) success on the merits, for a motion for a permanent injunction.  15 U.S.C. § 1116(a).

29.     Because Quantas Healthcare has met the burden of showing a substantial likelihood of likelihood of success on the merits, it is presumed that the Defendants' acts are causing irreparable harm.  Thus, Quantas Healthcare has met the burden on this element.

**C.     The Injury to Quantas Healthcare outweighs any Harm to the Defendants, and the Public Interest is Served by an Injunction.**

30.     The harm Defendants will suffer if preliminary relief is granted, if any, is slight when compared to the irreparable harm that Plaintiff will suffer if relief is denied. Courts have routinely found that the threat of continued trademark infringement without issuance of an injunction, as well as Plaintiff's loss of exclusivity occasioned by trademark infringement, support a finding that the balance of hardships weighs in favor of awarding injunctive relief. *Virtual Studios, Inc. v. Beaulieu Grp.*, LLC, 987 F. Supp. 2d 769, 781 (E.D. Tenn. 2013).

31.     Defendants have been profiting and continue to profit from the use of the Infringing Mark. Phelan Dec. at  ¶ 44.  In so doing, Defendants have effectively eliminated the exclusivity that Plaintiff was entitled to under the Lanham Act and the License Agreements. Phelan Dec. at ¶¶ 8—10, 31 .  Further, the public interest is served by upholding trademark protections and preventing infringement of exclusive rights in trademarks and risks to the goodwill associated in those marks.  Risk of loss of goodwill, loss of customers, reputational injury, consumer confusion,

and consumer complaints are harms that cannot be remedied absent an injunction.  Conversely, Defendants have no right to use the Marks and are instead willful infringers.  The public interest is served by preventing confusion in the market. An injunction will also preserve the status quo until an injunction hearing can be had.

32.     Thus, the balance of hardships tips decisively in Plaintiff's favor here. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

**D.     A TRO Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Marks Is Necessary and Appropriate Here.**

33.     Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of Plaintiff's Marks, and any mark substantially similar thereto, on or in connection with all Defendants' Facilities and domain names, and otherwise. Such relief is necessary to stop the ongoing harm to Plaintiff and to the goodwill that consumers associate with Plaintiff's Marks, and to prevent Defendants from continuing to benefit from their unauthorized use of Plaintiff's Marks.

34.     Accordingly, Plaintiff Quantas Healthcare requests the Court to enter a temporary injunction order against Defendants ordering:

a.     Defendants to immediately cease and desist the marketing, promoting, advertising, selling and/or offer to sell of any emergency and medical care services using the Sun City Marks, including but not limited to use of the Sun City Marks on all indoor and outdoor signage, television and radio advertising, marketing materials, customer documentation, and billing communications with customers or insurers.

b.     Defendants to immediately cease and desist from using or publishing content to the Internet from the Domain Name.

c.      Prohibited from registering any domain name that is identical or confusingly similar

to Sun City Marks.

DATE: April 27, 2023                          Respectfully Submitted,

                                              By: /s/ *Victor C. Johnson*
                                              Victor Johnson
                                              State Bar No. 24029640
                                              victor.johnson@dentons.com
                                              James Tuck
                                              State Bar No. 24110454
                                              james.tuck@dentons.com

                                              **DENTONS US LLP**
                                              2000 McKinney Ave., Suite 1900
                                              Dallas, Texas 75201
                                              Phone:  (214) 259-0900
                                              Fax:  (214) 259-0910

                                              ***Attorneys for Plaintiff Quantas Healthcare***
                                              ***Management, LLC***