IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

QUANTAS HEALTHCARE
MANAGEMENT, LLC,

    Plaintiff/Counter-Defendant,

V.

    No. 3:23-cv-891-K

SUN CITY EMERGENCY ROOM,
LLC; and SUN CITY WEST
EMERGENCY ROOM, LLC, LLC,

    Defendants/Counter-Plaintiffs.

## MEMORANDUM OPINION AND ORDER

Defendants and Counter-Plaintiffs Sun City Emergency Room, LLC, d/b/a El Paso Emergency Room ("El Paso East") and Sun City West Emergency Room, LLC, d/b/a El Paso West Emergency Room ("El Paso West") (collectively, "the ERs") have filed an Emergency Motion for Sanctions against Plaintiff and Counter-Defendant Quantas Healthcare Management, LLC under Federal Rule of Civil Procedure 37(b)(2). *See* Dkt. No. 66.

The ERs assert that "Quantas has violated [the Court's] January 29, 2024 Order (the 'Order') [Dkt. No. 65]" and ask the Court, as relief,

- "to dismiss with prejudice Quantas' affirmative claims against the ERs for trademark infringement, cyberpiracy, unfair competition, false designation of origin, and unjust enrichment";
- "order, yet again, that Quantas immediately produce all non-privileged responsive documents and information requested by the ERs so that such evidence may be used by the ERs in connection with their pursuit of their affirmative claims against Quantas";

-1-

- "order that Quantas, in defending against the ERs' claims, is barred from relying upon any evidence that it failed to produce by Judge Horan's February 19, 2024 deadline";
- "allow the ERs to depose Quantas' witnesses after the end of the discovery deadline once it has Quantas' documents in hand"; and
- "order Quantas to reimburse the ERs for their attorneys' fees and costs in bringing their original Motion to Compel (Dkt. 57) and this Motion for Sanctions."

Dkt. No. 66 at 4, 5; *see also id.* at 15.

Quantas filed a response, *see* Dkt. No. 71, and the ERs filed a reply, *see* Dkt. No. 72.

For the reasons and to the extent explained below, the Court grants in part and denies in part the ERs' Emergency Motion for Sanctions [Dkt. No. 66].

## Background

In the January 29, 2024 Electronic Order granting in part and denying in part the ERs' Motion to Compel Discovery [Dkt. No. 65], the Court explained and ordered that

> [t]he ERs ask the Court to overrule Quantas's discovery objections and order Quantas to (i) collect and produce non-privileged documents in response to the ERs' requests for production, (ii) supplement with meaningful answers its responses to the ERs' interrogatories and requests for admission, and (iii) produce an updated privilege log. More specifically, the ERs as the Court (1) to compel Quantas to produce documents responsive to the ERs' Requests for Production Nos. 1-46; (2) compel Quantas to fully respond to Interrogatory Nos. 1-2 and 5; and (3) compel Quantas to fully respond to Request for Admission Nos. 21, 38, and 39.
> The Court has laid out the standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel as to Federal Rule of Civil Procedure 34 requests for production and Federal Rule of Civil Procedure 33 interrogatories, and the Court incorporates and will apply – but will not repeat – those standards here. See VeroBlue Farms USA Inc. v. Wulf, ___ F.R.D. ___, No. 3:19-cv-764-X, 2021 WL 5176839, at

*5-*9 (N.D. Tex. Nov. 8, 2021); Lopez v. Don Herring Ltd., 327 F.R.D. 567, 573-86, 588-90 (N.D. Tex. 2018).

Quantas responded to most, if not all, of the requests at issue "[s]ubject to and without waiving the foregoing objections" or "[s]ubject to and without waiving the above general and specific objections." But responding "'subject to' and 'without waiving' objections is improper, as the undersigned and many other judges in this circuit and elsewhere have now made clear for several years." VeroBlue, 2021 WL 5176839, at *8 (cleaned up).

As for Quantas's objections to RFP Nos. 1-46, the Court, will, for efficiency's sake, address each of the objections by type based on the Court's review of the parties' briefing and Quantas's original and supplemental objections and responses.

The Court overrules the objections asserting that "much of the requested documentation is already in Defendants' possession" or that "much of the requested documentation and information is publicly available and already in Defendants' possession," where experience teaches that the same request for communications or agreements between individuals or entities may yield different results when directed to both parties to the communication or agreement. Under the circumstances of each of the requests to which Quantas objects on this ground which do not appear to encompass documents that would be publicly available – the Court finds that Quantas has not established that the requested discovery should be precluded because it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). And, otherwise, "the Federal Rules do not afford a party the option of refusing to produce discovery on the basis that [it] believes that the requesting party is already in possession of the requested discovery. " Henderson v. Wells Fargo Bank, N.A., No. 3:13CV378 (JBA), 2017 WL 684439, at *4 (D. Conn. Feb. 21, 2017); cf. VeroBlue, 2021 WL 5176839, at *27 ("It has long been a rule of discovery practice that a party can seek information to which he already knows the answer, and a party is not automatically precluded from propounding an interrogatory request to which he already knows the answer, although Federal Rule of Civil Procedure 26(c) grants this Court the power to protect a party or person from any unduly burdensome discovery." (cleaned up)).

The Court overrules the objections asserting that a request "does not have a temporal limit." As the ERs explain, their requests include the instruction that "[u]nless otherwise specifically stated, the relevant time period for these requests is January 1, 2017, to the present." And Quantas raised this objection to, for example, RFP No. 7, which does otherwise specifically state a time period.

The Court overrules the objections asserting that requests are "lacking in 'reasonable particularity' as required by Rule 34." "The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not. Therefore, the party requesting the production of documents must provide sufficient information to enable [the party to whom the request is directed] to identify responsive documents. The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required..... A Rule 34(a) request made with reasonable particularity does not require a reasonable attorney or party attempting to properly respond to ponder and to speculate in order to decide what is and what is not responsive." Lopez, 327 F.R.D. at 575-76, 577 (cleaned up). The requests to which Quantas objects satisfy this standard.

The Court overrules the objections asserting that the ERs' "incorporation of the 'All' or 'All documents' terms into the Requests is inherently overbroad and not reasonably tailored." Under the circumstances of each of the requests to which Quantas objects on this ground, the Court finds that Quantas has not established that the discovery request is overbroad considering the context of what is sought. But the Court agrees with Quantas that some of the requests seeking documents that "relate to" a location or other matter go too far to the point of bring overbroad and failing the reasonable particularity standard. The Court MODIFIES RFP Nos. 7, 11-12, 14-23, 25-28, and 30-32 to change "mention, refer, or relate to" or "mention, refer to, or relate to" to "mention or refer to"; RFP No. 24 to change "mention, refer to, relate to, or reflect" to "mention, refer to, or reflect"; and RFP No. 29 to change "refer or relate to" to "refer to."

The Court overrules the objections on relevance grounds because, "[u]nder Rule 26(b)(1), [u]nless otherwise limited by court order,... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." Lopez, 327 F.R.D. at 573 (cleaned up). Quantas has not explained how the objected-to responses seek documents that are not relevant to its claims or the ERs' defenses under this standard, and the burden lies with Quantas to do so to resist discovery. See Baker v. Walters, 652 F. Supp. 3d 768, 778 (N.D. Tex. 2023).

The Court overrules the objections to RFP Nos. 38 and 46 – seeking "Quantas' tax returns for each of the last five years" and "[a]ll Documents and Communications related to any attempt by Quantas to

use the Sun City Mark or Sun City Logo in the El Paso market since April 1, 2023" on the unexplained and apparently inapplicable ground that each request "is premature in that Plaintiff is still preparing their case." A party cannot refuse to comply with an opposing party's discovery requests "simply because he believes that the opposing parties ha[ve] not fully complied with his discovery requests to them." Turner v. Nationstar Mortg. LLC, No. 3:14-cv-1704-L-BN, 2015 WL 11120879, at *2 (N.D. Tex. May 14, 2015). Neither can a party delay responding to discovery requests on the ground that it has not yet served its own discovery on the requesting parties.

As to Quantas's objections based on attorney-client privilege or work product protection, as the Court has explained, by definition, "[t]he scope of discovery in civil cases under Federal Rule of Civil Procedure 26(b)(1) does not include privileged information or, absent the showing that Federal Rule of Civil Procedure 26(b)(3) mandates, work product protected information." Jolivet v. Compass Grp. USA, Inc., 340 F.R.D. 7, 17 (N.D. Tex. 2021) (cleaned up). Quantas, as parties often do, made specific objections to the ERs' Rule 34(a) request for production "to the extent it seeks to invade attorney-client privilege, work product immunity, or other applicable privileges." But those objections do not, alone, fulfill the withholding party's obligations that Federal Rule of Civil Procedure 26(b)(5)(A) imposes.

"Because the responding party is entitled to refuse to produce requested discovery if it is privileged or work product protected, the rules require that, [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)." Jolivet, 340 F.R.D. at 20 (cleaned up); accord Heller v. City of Dallas, 303 F.R.D. 466, 486 (N.D. Tex. 2014) ("To comply with the requirements to support withholding any responsive document or information as privileged or protected work product, a privilege log or equivalent document complying with Federal Rule of Civil Procedure 26(b)(5)(A)'s requirements must be produced for any documents, communications, or other materials withheld from production on the grounds of attorney-client privilege, work product, or other privilege, immunity, or protection. Accordingly, a party may properly raise and preserve an objection to production of documents in response to a specific document request or interrogatory by objecting 'to the extent' that the requests seeks privileged materials or work product, so long as

the responding party also provides the information required by Rule 26(b)(5)(A).").

"This is often accomplished through a privilege log. [A]lthough Rule 26 does not attempt to define for each case what information must be provided, a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to test[] the merits of the privilege claim. Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." Jolivet, 340 F.R.D. at 20-21 (cleaned up).

The Court orders that Quantas must, by February 19, 2024, serve on the ERs' counsel complete responses (without objections) to Requests for Production Nos. 1-46 (as modified above) and produce all unproduced documents and electronically stored information that are responsive to those requests and that are in Quantas's possession, custody, or control, consistent with the rulings above and in compliance with Federal Rule of Civil Procedure 34(b)'s requirements, see Lopez, 327 F.R.D. at 575-79, and serve an updated, supplemental privilege log that complies with Federal Rule of Civil Procedure 26(a)(5)'s requirements.

Turning to the interrogatories at issue, Interrogatory No. 1 asks Quantas to "[i]dentify each category of monetary damage You contend You suffered as a result of the ERs' use of the Sun City Word Mark, including in your answer the exact nature and amount of each category of harm allegedly suffered"; Interrogatory No. 2 asks Quantas to "[i]dentify each category of monetary damage You contend You have suffered as a result of the ERs' use of the Sun City Logo, including in your answer the exact nature"; and Interrogatory No. 5 asks Quantas to "[i]f You contend that Matthew Rinaldi was authorized to execute the Trademark Assignment on behalf of El Paso East, please identify the person(s) who authorized Mr. Rinaldi to execute the Trademark Assignment and the Communication or Document through which such authorization was provided." Quantas objected to and answer each of these interrogatories by "assert[ing] that this Request is premature in that Plaintiff is still preparing their case; accordingly, Plaintiff will supplement when necessary and stating that "Plaintiff will supplement as more information becomes available."

Under Rule 33, Quantas is required to pull together complete answers by "reviewing all sources of responsive information reasonably available to [Quantas] and providing the responsive, relevant facts reasonably available to" Quantas. Lopez, 327 F.R.D. at 579 (cleaned up). The Court, after considering the briefing, is persuaded that Quantas has not done to the extent that it should be able to at this

point. The Court orders Quantas to, by February 19, 2024, serve on Defendants' counsel complete answers – without objections – to Interrogatory Nos. 1, 2, and 5, consistent with the rulings above and in compliance with Federal Rule of Civil Procedure 33's requirements. See Lopez, 327 F.R.D. at 579-81.

But Federal Rule of Civil Procedure 37 does not provide for a motion to compel answers to Federal Rule of Civil Procedure 36 requests for admission. See VeroBlue, 2021 WL 5176839, at *4. Once the answering party has served answers or objections, Rule 36(a)(6) provides that "[t]he requesting party may move to determine the sufficiency of an answer or objection" and that, "[u]nless the court finds an objection justified, it must order that an answer be served" and, "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." FED. R. CIV. P. 36(a)(6).

"Where the party to whom a Rule 36 request is directed serves on the requesting party a written answer or objection, Rule 36(a)(4) requires that, '[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.' Fed. R. Civ. P. 36(a)(4). 'A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.' Id. Further, '[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.'" VeroBlue, 2021 WL 5176839, at *4 (cleaned up).

But "the Court will treat [a Rule 37(a) motion to compel] as appropriate as a Federal Rule of Civil Procedure 36(a)(6) motion to determine the sufficiency of answers and objections to Rule 36 requests for admission" and will do here. Campos v. HMK Mortg., LLC, No. 3:18-cv-1362-X, 2019 WL 7842434, at *2 (N.D. Tex. Dec. 26, 2019) (cleaned up). The ERs ask the Court to order Quantas to fully respond to three of the requests for admission. And, under Rule 36(a)(6) if an objection is not justified or an answer does not comply with Rule 36(a), the Court may order that an amended answer be served.

RFA No. 21 asks Quantas to "[a]dmit that Dr. Robert Phelan is the only individual who had access to the ERs' Google Business profiles from their inception until April 20, 2023"; RFA No. 38 asked Quantas to "[a]dmit that Dr. Robert Phelan withdrew funds from the ERs' bank account(s) on or after April 10, 2023"; and RFA No. 39 asks Quantas to "[a]dmit that Dr. Robert Phelan instructed Quantas employees to

redirect mail from the ERs to Quantas on or after April 10, 2023." Quantas objected and responded to each RFA by stating that "[t]he Request is premature as the Plaintiff is still developing its case; accordingly, Plaintiff will supplement once discovery has occurred and more information is known."

In its response to the MTC, Quantas attempts to justify this "premature" objection for RFA No. 21 but offers no explanation as to RFA Nos. 38 or 39. And the Court could not sustain this objection as to RFA Nos. 38 and 39 in any event, where they each ask only about conduct by Dr. Phelan.

As for RFA No. 21, "[o]n the Court's reading of Rule 36(a)(4)'s text's plain meaning, a party can sufficiently 'state in detail why the answering party cannot truthfully admit or deny it' by 'assert[ing] lack of knowledge or information as [the] reason for failing to admit or deny' and 'stat[ing] that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.' Fed. R. Civ. P. 36(a)(4)." VeroBlue, 2021 WL 5176839, at *18 (cleaned up). "And nothing in Rule 36 requires an answering party to – after stating that the answering party 'has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny' – further 'state in detail the efforts made in conducting its 'reasonable inquiry.'" Id. at *21 (cleaned up). But Quantas has not done any of that or claimed that it has already made the required reasonable inquiry.

The Court finds that the objections and responses to RFA Nos. 21, 38, and 39 are not justified or proper under Rule 36 and orders Quantas to serve amended answers to these requests, in compliance with Rule 36's standards, by February 19, 2024.

Finally, the Court finds that, under Federal Rules of Civil Procedure 36(a)(6) and 37(a)(5), considering all of the circumstances here and the Court's rulings, the parties will bear their own expenses, including attorneys' fees, in connection with this motion.

Dkt. No. 65.

The ERs explain that they

bring this Motion for Sanctions against Quantas because Quantas has violated Judge Horan's January 29, 2024 Order (the "Order"). *See* Dkt. No. 65. Indeed, after overruling effectively all of Quantas' discovery objections, Judge Horan ordered Quantas to produce, by February 19, 2024, "all unproduced documents and electronically stored information that are responsive to [the ERs'] requests and that are in Quantas's

possession, custody, or control." The ERs now have no choice but to seek sanctions because Quantas failed to produce a single additional document by Judge Horan's deadline, and that total failure is wreaking havoc on the ERs' ability to prepare for and complete multiple essential depositions by the impending discovery deadline – which is just one month away.

In addition to failing to collect and produce all responsive documents, Quantas failed to comply with other aspects of Judge Horan's Order too. For example, although Judge Horan ordered Quantas to produce a privilege log by February 19, 2024, Quantas did not do so. Further, although Quantas provided "supplemental" answers to certain Interrogatories, those supplemental answers remain – in most respects – evasive and unresponsive.

Quantas' near-total failure to cooperate in the discovery process has materially impede the ERs' ability to fairly prepare its claims and defenses in this case. For instance, the ERs noticed Quantas' corporate representative's deposition for February 28, 2024, but Quantas' continued delays in producing any responsive documents now make that date an impossibility. Moreover, as discovery closes entirely next month, Quantas' delay tactics have left the ERs with virtually no time to review whatever documents Quantas may produce in the future, prepare for the multiple depositions that must be taken, and schedule and take those depositions with documents in hand. This is fundamentally unfair to the ERs.

Dkt. No. 66 at 4-5.

As background to their sanctions motion, the ERs explain that

Quantas filed this lawsuit ten months ago (see Dkt. 1), accusing the ERs of trademark infringement of a brand name and logo that were no longer in use by either party. *See generally* Dkts. 17, 53 (opposing Quantas' requests for injunctive relief on a similar basis). The ERs also filed counterclaims against Quantas. Dkt. 13. The ERs' counterclaims arise from various acts of self-dealing and breaches of contract perpetrated by the two principals of Quantas during the time period when Quantas and those two individuals were also managing the ERs. *See* Dkt. 13.

Seeing information relevant to both Quantas' and the ERs' competing claims, the ERs promptly propounded discovery to Quantas in August 2023. Dkt. 57-1 at App. 9-36. One day before Quantas' deadline to respond to the ERs' discovery, Quantas requested an additional onemonth extension to "assemble responsive information and

-9-

documents and prepare [Quantas'] response." Dkt. 53-1 at App. 379. This proved to be the first of many extensions the ERs would grant Quantas. See Dkt. 57 at 3 (summarizing same). Yet, despite the now over six months Quantas has had to prepare its written responses and gather responsive documents, Quantas has produced exactly one responsive email. Dkt. 63 at 2. The remainder of the 620 pages Quantas has produced thus far have been overwhelmingly irrelevant, including over 500 pages of documents related to trademarks and emergency room facilities that are not in dispute in this litigation. *Id.* at 2-4.

Quantas' failure to collect relevant communications from its custodians culminated in the ERs' First Motion to Compel on December 7, 2023. Dkt. 57. This Court subsequently granted that Motion in almost all respects on January 29, 2024, and ordered Quantas to, by February 19, 2024: (1) serve complete responses (without objections) to the ERs' Requests for Production Nos. 1-46 (as modified by the Court's Order) and produce all unproduced documents and electronically stored information responsive to those requests in Quantas' possession, custody, or control, along with an updated, supplemental privilege log; (2) serve complete answers (without objections) to the ERs' Interrogatory Nos. 1, 2, and 5; and (3) serve amended answers to the ERs' RFA Nos. 21, 38, and 39. Dkt. 65.

On Quantas' deadline for compliance, it served supplemental responses to the ERs' RFAs and Interrogatories (without a verification). App. 003-023. Yet Quantas' supplemental responses to the Interrogatories remain unresponsive. For example, in response to Interrogatory No. 2 (which sought a description of the types and amounts of damages sought by Quantas), Quantas once again refused to answer, stating that although the information was within its own possession, it would supplement later as more information becomes available. App. 021-022. This answer is nothing more than a naked refusal to comply with Judge Horan's Order. The supplemental response to Interrogatory No. 5 is just as bad. Interrogatory No. 5 posits a critically relevant question in this case: What human being authorized Quantas' in-house lawyer to execute the trademark assignment that is the lynchpin of Quantas' trademark claims? Yet Quantas' answer is classically evasive. It states only: "Matt Rinaldi was authorized to sign the Trademark Assignment in his role as General Counsel to El Paso East." App. 022-023. That statement does not tell the ERs' who authorized him to execute it, which is what the Interrogatory asked.

Beyond these continually evasive Interrogatory answers, Quantas failed to serve amended responses to the ERs' Requests for Production or produce even a single additional page of responsive

material, citing "collection/processing issues on the responsive documents." App. 003. Nor did it provide the required privilege log that Judge Horan ordered by produced.

Discovery closes in this case in roughly a month. Dkt. 26. Dispositive motions are due in a month and a half, on April 8, 2024. *Id.* Yet, the ERs have been unable to take any depositions because they have not received any of the substantive evidence they need to take depositions. Quantas' dilatory discovery conduct in this case has significantly prejudiced the ERs, and it should be sanctioned accordingly.

....

Quantas' egregious discovery conduct in this case warrants dismissal of its affirmative claims against the ERs with prejudice. Quantas has acted willfully in refusing to collect and produce relevant documents, its conduct has substantially prejudiced the ERs' ability to prepare for trial, and, in view of Quantas' repeated failures to comply with its discovery obligations, lesser sanctions will not suffice.

But, should the Court determine dismissal is a premature sanction, the Court should alternatively preclude Quantas from presenting evidence at trial that it should have produced by February 19, 2024 pursuant to the deadline imposed in the Court's Order on the ERs' Motion to Compel. *See* Dkt. 65. In either case, the ERs are additionally entitled to recover their reasonable attorney's fees incurred in connection with their First Motion to Compel (Dkt. 57) and this Motion for Sanctions.

Dkt. No. 66 at 6-7. 9-10.

Quantas responds that the Court should deny the sanctions motion "because: (1) any alleged nondisclosure is not the result of willful and/or bad faith dealing; (2) Defendants' alleged prejudice of any alleged nondisclosure is overstated; and (3) the sanctions Defendants seek are extraordinary and unjustified." Dkt. No. 71 at 1.

According to Quantas, the ERs' sanctions motion

arises from [the ERs'] allegations that Quantas is engaging in conduct to willfully, and in bad faith, withhold from disclosure responsive documents and providing unresponsive and/or evasive admissions and answers to interrogatories.

Defendants brought their original Motion to Compel Discovery on

-11-

December 7, 2023 (Dkt. 57). This Court entered a text order granting in part and denying in part the relief Quantas requested (Dkt. 65) ("Order"). Specifically, it found nearly half of Defendants' Requests for Production ("RFPs") overbroad, not stated with particularity, and modified such requests accordingly. *See* Dkt. 65. The Order also set a date of February 19, 2024, for Quantas to provide updated responses to Defendants' discovery requests.

On February 19, 2024, Quantas submitted supplemental responses to Defendants interrogatories ("ROGs") and requests for admissions ("RFAs") in accordance with the Court's Order. *See* Dkt. 66, at App. 3. Particularly, Quantas notified Defendant of "collection/processing issues" and that such would be resolved and the documents produced later that week. *Id.* The very next day, February 20, 2024, Defendants filed this instant Motion seeking sanctions against Quantas.

Quantas has produced further documents to Defendants since the filing of this Motion. (*See* Ex. E, at Appx 019). In its supplemental response, Quantas produced 385 documents that were responsive to RFP Nos. 1-12, 18-20, 23-35, 37-38, 40-42, and 45.

Dkt. No. 71 at 1-2.

The ERs reply that,

[s]ince the ERs filed their Emergency Motion for Sanctions (the "Motion") (Dkt. 66), Quantas' discovery failures have worsened. Indeed, the ERs had long been scheduled to depose Quantas' corporate representative on document preservation, collection, and production issues on Wednesday, February 28 – but when the date finally came, Quantas failed to make a witness available. As a result, the ERs have been deprived of the opportunity to test the veracity of the excuses Quantas now offers for its violations of this Court's January 29 Order (Dkt. 65).

There is no mystery as to why Quantas cancelled the deposition. The truth is that Quantas has still, to this day, not conducted any meaningful collection of e-mails, text messages, or other types of documents in this case. It has been seven months since the ERs requested basic document discovery, and Quantas has produced a grand total of only seven e-mails. It has produced no text messages or WhatsApp messages (an app these parties use to communicate with one another). And it has refused to tell the ERs – much less this Court – whether it ever will collect and produce such materials, despite having been ordered to do so. With discovery closing this month, the parties

have come to the end of the road. Quantas must be held accountable for
its bad faith conduct and its violations of this Court's Order.

Dkt. No. 72 at 1-2.

## Legal Standards

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails
to obey an order to provide or permit discovery, ... the court where the action is
pending may issue further just orders. They may include the following:

> (i)    directing that the matters embraced in the order or other
> designated facts be taken as established for purposes of the
> action, as the prevailing party claims;
> (ii)    prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated
> matters in evidence;
> (iii)    striking pleadings in whole or in part;
> (iv)    staying further proceedings until the order is obeyed;
> (v)    dismissing the action or proceeding in whole or in part;
> (vi)    rendering a default judgment against the disobedient party; or
> (vii)    treating as contempt of court the failure to obey any order except
> an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A)(i)-(vii).

Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders
[described under Rule 37(b)(2)(A)], the court must order the disobedient party, the
attorney advising that party, or both to pay the reasonable expenses, including
attorney's fees, caused by the failure, unless the failure was substantially justified or
other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

"A party's discovery conduct is found to be 'substantially justified' under Rule
37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to
the appropriateness of the contested action.'" *S.E.C. v. Kiselak Capital Grp., LLC,*

No. 4:09-cv-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (quoting *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (in turn quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* at *3 (cleaned up).

The undersigned has authority to enter a nondispositive order granting attorneys' fees or other nondispositive sanctions under Federal Rule of Civil Procedure 37(b) or denying a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam) (a magistrate judge has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37); *Siegel v. Compass Bank*, No. 3:18-cv-1023-X, 2021 WL 4498914, at *1 (N.D. Tex. Jan. 11, 2021) ("To determine whether a referred motion for sanctions is dispositive or non-dispositive, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Rule 72(a) or 72(b) applies. To allow otherwise would permit the party seeking sanctions to engage in a game of labels that would improperly dictate the standard of review." (cleaned up)); *Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers a motion for sanctions to a magistrate judge, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the

determination of whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the magistrate judge finds that dismissal or another sanction disposing of a claim or defense is unwarranted, the motions should be characterized as non-dispositive and may be ruled on by the magistrate judge) (followed in *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-1885-L-BN, Dkt. No. 373 at 2 (N.D. Tex. Dec. 1, 2016)).

Rule 37(b) "is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions." *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). "Sanctions under Rule 37 serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986).

Rule 37(b)(2) "empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, [Rule] 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (cleaned up); *see also Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions.").

"The district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith*, 685 F.3d at 488 (cleaned up). "This discretion,

however, is limited" based on the type of sanctions imposed. *Id.*

The United States Court of Appeals for the Fifth Circuit has explained that its "caselaw imposes a heighted standard for litigation-ending sanctions (sometimes called 'death penalty' sanctions). For a lesser sanction, we broadly require the district court to determine the sanctions are 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery.'" *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) (cleaned up).

The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *See Smith*, 685 F.3d at 488-90.

And the Fifth Circuit recently repeated its guidance that, "to levy a litigation-ending sanction for a discovery violation, the court must make four findings. *First*, the violation reflects bad faith or willfulness. *Second*, the client, not counsel, is responsible for the violation. *Third*, the violation substantially prejudiced the opposing party. *Fourth*, a lesser sanction would not substantially achieve the desired deterrent effect." *Vikas WSP, Ltd. v. Econ. Mud Prod. Co.*, 23 F.4th 442, 454 (5th Cir. 2022) (cleaned up); *accord Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to be employed only when the failure to comply with the court's order results from wilfullness or bad faith rather than from an inability to comply. Nevertheless, deliberate, repeated refusals to obey discovery orders have been held to warrant the use of this ultimate

-16-

sanction." (cleaned up)); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) ("[D]ismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith, and not from the inability to comply.").

But "[l]esser sanctions do not require a finding of willfulness." *Smith*, 685 F.3d at 488. "Of course, the flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed," but "the lack of willful, contumacious, or prolonged misconduct [does not] prohibit[] all sanctions." *Chilcutt*, 4 F.3d at 1322 n.23. Even where a party was "unable to comply with the discovery requests, the district court still ha[s] broad discretion to mete out a lesser sanction than dismissal." *Id.* (cleaned up).

That is because "the type of conduct displayed by a party had no bearing on whether sanctions should be imposed, but only on the type of sanctions imposed," and "[t]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply." *Id.* (cleaned up).

## Analysis

I.   <u>Quantas violated the Court's January 29, 2024 Electronic Order.</u>

In the January 29, 2024 Electronic Order, the Court ordered that "Quantas must, by February 19, 2024,"

- "serve on the ERs' counsel complete responses (without objections) to Requests for Production Nos. 1-46 (as modified [by the Court]) and produce all unproduced documents and

electronically stored information that are responsive to those requests and that are in Quantas's possession, custody, or control, consistent with the rulings above and in compliance with Federal Rule of Civil Procedure 34(b)'s requirements, see Lopez, 327 F.R.D. at 575-79, and serve an updated, supplemental privilege log that complies with Federal Rule of Civil Procedure 26(a)(5)'s requirements,"

- "serve on Defendants' counsel complete answers – without objections – to Interrogatory Nos. 1, 2, and 5, consistent with the rulings above and in compliance with Federal Rule of Civil Procedure 33's requirements," and
- "serve amended answers to [Request for Admission Nos. 21, 38, and 39], in compliance with Rule 36's standards."

Dkt. No. 65.

The ERs contend that Quantas violated the Electronic Order's requirements because,

- on February 19, 2024, Quantas "served supplemental responses to the ERs' RFAs and Interrogatories (without a verification)," but "Quantas' supplemental responses to the Interrogatories remain unresponsive";
- on February 19, 2024, "Quantas failed to serve amended responses to the ERs' Requests for Production or produce even a single additional page of responsive material, citing 'collection/processing issues on the responsive documents'";
- on February 19, 2024, Quantas did not "provide the required privilege log that Judge Horan ordered by produced";
- on February 27, 2024, "[e]ight days after the Court-ordered production deadline, Quantas finally served its Second Supplemental Responses and Objections to Defendant's First Requests for Production and a corresponding document production";
- "Quantas's supplemental production contains a mere 42 documents, only 37 of which were unique" and "[o]nly three of those documents were emails";
- "[n]o other communications were produced, even though the ERs have personal knowledge that the doctors frequently used text and WhatsApp to communicate prior to their separation from Quantas";
- "[t]he production otherwise consisted largely of documents that are already in the ERs' possession – such as the ERs' Company Agreement, Medical Director Services Agreement, and Master Services Agreement with Quantas – as well as undated screenshots of the ERs' former

-18-

website and undated photos of the Sun City logo on signage and office supplies";

- "Quantas has still, [as of March 4, 2024], not conducted any meaningful collection of e-mails, text messages, or other types of documents in this case" or "collected any material number of e-mails, WhatsApps, or text messages," where "[i]t has been seven months since the ERs requested basic document discovery, and Quantas has produced a grand total of only seven e-mails," "has produced no text messages or WhatsApp messages (an app these parties use to communicate with one another)," and "has refused to tell the ERs – much less this Court – whether it ever will collect and produce such materials, despite having been ordered to do so"; and

- "Quantas, by all indications, still has not collected communications from its own custodians."

Dkt. No. 66 at 7 (cleaned up); Dkt. No. 72 at 2-5, 10 (cleaned up).

In their reply, the ERs assert that, "[t]aken together, Quantas' facially deficient production, Quantas' refusal to present a Rule 30(b)(6) witness on document collection issues, Quantas' refusal to answer questions about its collection efforts, and the fact that there are no affidavits in the record swearing to same demonstrate the alleged 'technical difficulties' are a distraction." Dkt. No. 72 at 5.

The undersigned agrees with the ERs' assessment.

While Quantas provided a complete answer to Interrogatory Nos. 1 and 2 (the ERs' motion focuses on the original and not the supplemental answer to Interrogatory No. 2), Quantas violated the Court's order to serve a complete answer to Interrogatory No. 5.

Interrogatory No. 5 asks Quantas, "[i]f You contend that Matthew Rinaldi was authorized to execute the Trademark Assignment on behalf of El Paso East, please identify the person(s) who authorized Mr. Rinaldi to execute the Trademark

Assignment and the Communication or Document through which such authorization was provided." Dkt. No. 66-1 at 22 of 29. Quantas's supplemental answer states: "Matt Rinaldi was authorized to sign the Trademark Assignment in his role as General Counsel to El Paso East." Dkt. No. 66-1 at 23 of 29. As the ERs explain, this interrogatory asks "[w]hat human being authorized Quantas' in-house lawyer to execute the trademark assignment that is the lynchpin of Quantas' trademark claims," but Quantas' supplemental answer "does not tell the ERs who authorized him to execute it, which is what the Interrogatory asked." Dkt. No. 66 at 7. The Court agrees that this supplemental answer is evasive. *Cf.* Fed. R. Civ. P. 37(a)(4) ("For purposes of [Federal Rule of Civil Procedure 37](a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

More significantly, the ERs report Quantas' ongoing failure to substantially supplement its document production, reflecting an apparent and ongoing failure to conduct any meaningful collection of e-mails, text messages, or other types of documents in this case. *See also* Dkt. No. 66-1 at 25-26 of 29 (Declaration of Barton Wayne Cox).

The Court has previously explained that,

[i]n response to a [Federal Rule of Civil Procedure] 34(a)(1) RFP, "a party cannot produce what it does not have, and so, [c]learly, the court cannot compel [a party] to produce non-existent documents." But, "[i]n responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, Fed. R. Civ. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a

reasonable inquiry and exercised due diligence." And "[t]he fact that a party may disbelieve or disagree with a response to a discovery request ... is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect" or the requesting party's belief, without more, believes that a discovery production is not complete.

As a general matter, "[i]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility," and "[a] responding party is best situated to preserve, search, and produce its own [electronically stored information]," which "[p]rinciple ... is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel[, and eschewing 'discovery on discovery,'] unless a specific deficiency is shown in a party's production."

To make this showing of a specific or material deficiency in the other party's production to require the responding party to engage in additional searches or discovery efforts or to obtain "discovery on discovery" that is "both relevant and proportional to the needs of the case" under Rule 26(b)(1), the requesting party should make a showing, including through "the documents that have been produced," that allows the Court to make "a reasonable deduction that other documents may exist or did exist and have been destroyed" or must "point to the existence of additional responsive material."

*VeroBlue*, 2021 WL 5176839, at *9 (cleaned up).

In the motion and reply (as quoted above), the ERs have persuasively shown, including through the documents that have been produced or that the ERs know should exist, that additional responsive materials exist that Quantas has not produced – or apparently collected for production. As only the most stark example, as of 14 days after the Court-ordered deadline, Quantas had produced only 7 e-mails and no text messages or WhatsApp messages (an app that the parties use to communicate with one another).

Quantas does not deny that it has not conducted a complete collection and production of all unproduced documents and electronically stored information that are responsive to Requests for Production Nos. 1-46 (as modified by the Court) and that are in Quantas's possession, custody, or control. Quantas instead offers the following excuses:

- "Quantas noted in its February 19, 2024, email to Defendants' counsel technical difficulties it was having for document production" and "stated that it was having 'collection/processing issues on the responsive documents' and further informed Defendants that it believed it could have the issues resolved and the responsive documents produced within the week";

- "[a]s one example, (Ex. A, at Appx002) shows an email demonstrating counsels' firm's security protocol was not allowing/blocking the transfer of files from Quantas";

- "[a]n additional factor causing delay in Quantas' document collection and production has been the decentralized nature of Quantas' records," where "Quantas does not utilize a central document server that neatly stores all corporate records, emails, and files" but "[r]ather, relevant records are dispersed across individual employee email accounts and computers" and "Quantas has had to investigate which specific employees may possess responsive documents, contact each individually, obtain account and system credentials to access any relevant files, and manually search emails, folders, and systems for relevant documents";

- Quantas's "decentralized system has added substantial time to Quantas' document collection process as it has had to coordinate with and gather files from multiple sources rather than easily accessing files from a single, unified system" but "Quantas has diligently undertaken these efforts promptly after receiving Defendants' document requests, but the nature of Quantas' record system has undoubtedly caused increased time to pull together all responsive materials compared to an organization utilizing centralized servers and file storage," and "Quantas continues working to locate any final responsive documents not yet discovered from individual sources and expects to supplement its production on a rolling basis as needed";

- "another significant factor impacting the timing of Quantas' document production has been an emergency situation that developed approximately two weeks" before February 28, 2024, in which "two (2)

emergency room facilities that Quantas provides management services for in Houston were summarily shut down without any notice to Quantas," which "caused substantial managerial and regulatory issues for Quantas, including but not limited to dealing with leases and lease payments, payroll and payroll taxes, bank accounts being frozen, and personnel issues" and which "emerging crisis required Quantas to devote substantial efforts to handling the fallout from the abrupt facility closures";

- "Quantas leadership and limited staff – the same people tasked with gathering documents – had to shift their focus to mitigating the issues caused by the unexpected shutdown of the ERs that Quantas supports," and, "[a]s a result, Quantas' resources for records search and collection have been severely constrained for the past couple weeks," but, "[n]ow that Quantas has made some progress addressing that issue, it has been able to redirect efforts back to compiling documents and supplementing its production to Defendants," although "this emergency situation further explains why Quantas has needed additional time beyond the Court's deadline to pull together documents from multiple sources"; and

- the ERs' "continued assertion that the responses were 'due over six months ago' is misstated," where the ERs "do not address that Quantas' objections to the original RFPs were substantiated for nearly half of the RFPs and had to modified by this Court" and, "[s]ince the time that appropriate RFPs were produced to Quantas, a mere twenty-two (22) days passed before" the ERs filed their sanctions motion.

Dkt. No. 71 at 5-7 (cleaned up).

These explanations and excuses do not account for the facts that

- the Court's January 29, 2024 Electronic Order ordered the supplemental production to be complete by February 19, 2024;

- the attached email reflecting that Quantas's counsels' firm's security protocol was not allowing/blocking the transfer of files from Quantas is dated February 20, 2024;

- the Court modified the scope of only RFP Nos. 7, 11-12, 14-23, 25-28, and 30-32 but ordered Quantas to "serve on the ERs' counsel complete responses (without objections) to Requests for Production Nos. 1-46 (as modified [by the Court]) and produce all unproduced documents and electronically stored information that are responsive to those requests," and Quantas should have engaged in substantial document collection long before the Court's order, including to account for the nature and limitations of Quantas's system;

-23-

- if Quantas required additional time due to an unexpected crisis, it should have informed the ERs' counsel and asked for it and, if an agreement could not be reached, filed a motion to modify the court-ordered deadline; and
- as the ERs point out, "Quantas offers no explanation [or evidence] for why the 'collection/processing issues' it purportedly experienced could not have been sorted out over the last seven months or in the weeks since February 19," 2024.

Dkt. No. 72 at 2-6. As the ERs' counsel's declaration attests:

- "On January 26, 2024, the ERs noticed the 30(6)(6) deposition of Plaintiff and Counter-Defendant Quantas Healthcare Management, LLC," where "[t]he ERs selected February 28, 2024 for the deposition so that we would hopefully have time to review Quantas' anticipated document production prior to the deposition."
- "On the February 6, 2024 meet and confer regarding the noticed deposition topics, counsel for Quantas (Mr. Tuck) indicated that Quantas did not intend to raise any objections to the notice and that a witness would be available." "On the February 6, 2024 meet and confer, I conveyed to counsel for Quantas that the ERs would press ahead with depositions in view of the imminent close of discovery, but that the ERs would take appropriate steps if Quantas failed to produce documents on February 19, 2024 as ordered by the Court. Counsel for Quantas confirmed on that call that Quantas was aware of the Court's January 29, 2024 Order (0kt. 65) on the ERs' First Motion to Compel, but that it had not provided any additional documents to its counsel for review and production." And "Mr. Tuck did not mention any issues with Quantas' anticipated production related to 'technical difficulties' or an emergency situation with Quantas' emergency room facilities in Houston."
- "On February 19, 2024, counsel for Quantas served supplemental Interrogatory answers and supplemental responses to Requests for Admission. Quantas did not serve any updated responses to the Requests for Production, nor did it produce any additional documents on or before the February 19, 2024 deadline set by the Court. Quantas also did not provide a privilege log. True and correct copies of the supplemental discovery responses served by Quantas on February 19 are included within the Appendix to the instant Motion."
- "On February 20, 2024, when I again held a telephone conference with Mr. Tuck, he again made no mention of any 'technical difficulties' or emergency situations that prevented Quantas from timely making its production on February 19, 2024. Rather, he informed me that Quantas

had yet to provide documents responsive to him that could, in turn, be produced to the ERs in discovery."

- "On February 27, 2024, counsel for Quantas (Mr. Tuck) informed us for the first time that Quantas would not make a Rule 30(b)(6) witness available on February 28," and, "[b]y the time Quantas so informed us, we had already spent time and money preparing for the deposition."
- "On February 29, 2024, I wrote to Mr. Tuck asking questions about Quantas' document collection efforts," but "Mr. Tuck's response did not answer the questions regarding how many e-mails his law firm had collected, when any such e-mails were collected, or from whom such e-mails were collected."

Dkt. No. 66-1 at 25-26 of 29; Dkt. No. 72-1 at 46-47 of 56.

As the ERs' counsel explains, the ERs attempted, through a Federal Rule of Civil Procedure 30(b)(6) corporate representative deposition of Quantas, to learn more about Quantas's document preservation, collection, and production issues, but, "when the date finally came, Quantas failed to make a witness available," and, so, the ERs were unable "to test the veracity of the excuses Quantas now offers for its violations of this Court's January 29," 2024 Electronic Order. Dkt. No. 72 at 1.

II. **The Court cannot find that Quantas's violations of the Court's order were willful or in bad faith.**

The Fifth Circuit has explained that "discovery delays are serious, especially when they are part of a pattern," and that "[k]nowingly ignoring an obligation, especially multiple times, may alone be enough to find bad faith." *Calsep A/S v. Dabral*, 84 F.4th 304, 314 (5th Cir. 2023).

The record evidence here supports a finding that Quantas itself knew about its obligations to supplement its document production and failed to timely do so –

-25-

and that Quantas itself, rather than its outside counsel, appears to be responsible for the ongoing violations.

But the Court cannot find these are the "extreme circumstances" under which Rule 37(b)(2) sanctions can and should be used as a "lethal weapon" through litigation-ending or "death penalty" sanctions. *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380, 1383 (5th Cir. 1994).

Quantas has not conducted itself in discovery in this case as any party should. And, for all the reasons that the ERs persuasively explain in their sanctions motion and reply, Quantas's ongoing violations of the Court's discovery order has significantly prejudiced the ERs' ability to prepare for trial. *See* Dkt. No. 66 at 11-12; Dkt. No. 72 at 6-8.

But the Court finds, under the circumstances, that more would be required to find willfulness or bad faith.

III.   <u>Serious sanctions are needed and appropriate.</u>

Still, "[l]esser sanctions do not require a finding of willfulness." *Smith*, 685 F.3d at 488. And, while "the flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed," "the lack of willful, contumacious, or prolonged misconduct [does not] prohibit[] all sanctions." *Chilcutt*, 4 F.3d at 1322 n.23.

Quantas's conduct, as described above, warrants a serious sanction that is just and related to the claims that were at issue in the order to provide discovery. Here, the ERs' alternative requests are, the Court finds, the appropriate, least severe

sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances.

The Court orders, under Rule 37(b)(2)(A) and (C), that

1.  Quantas must, by **April 22, 2024**, serve on the ERs' counsel complete responses (without objections) to Requests for Production Nos. 1-46 (as modified by the Court) and produce all unproduced documents and electronically stored information that are responsive to those requests and that are in Quantas's possession, custody, or control, consistent with the rulings above and in compliance with Federal Rule of Civil Procedure 34(b)'s requirements;
2.  Quantas, in defending against the ERs' claims, is barred from relying upon any evidence that it failed to produce by the court-ordered February 19, 2024 deadline;
3.  the ERs are permitted to depose Quantas' witnesses on dates of the ERs' choosing after the end of the discovery deadline once the ERs have Quantas' documents in hand but, in any event, by no later than **May 22, 2024**; and
4.  Quantas must reimburse the ERs for their reasonable attorneys' fees and costs in drafting and filing their Motion for Sanctions [Dkt. No. 66] and reply [Dkt. No. 72] and appendices in support.

The discovery deadline has now passed, and the dispositive motions deadline is upon the parties. The time in which Quantas will be allowed to benefit from its violations of its discovery obligations is at an end.

These sanctions appropriately address and remediate Quantas's discovery misconduct and the resulting prejudice to the ERs. Contrary to Quantas's suggestion, ordering only that the ERs may take post-discovery-period depositions is not a sufficient remedy here.

And, although the Court previously declined to award fees for the ERs' Motion to Compel Discovery [Dkt. No. 57] under Federal Rule of Civil Procedure 37(a)(5), Quantas's failure to comply with the Court's January 29, 2024 Electronic Order –

which was not substantially justified notwithstanding Quantas's excuses, as explained above – necessitated this sanctions motion. Quantas now should bear the expense of the ERs' attorneys' fees and costs incurred in bringing it.

The Court directs the ERs' counsel and Quantas's counsel to confer by telephone or videoconference or in person about the reasonable amount of these attorneys' fees and costs to be awarded under Rule 37(b)(2)(C), as specified above.

By no later than **April 29, 2024**, the parties must file a joint report notifying the Court of the results of the conference. If all disputed issues as to the amount of attorneys' fees and costs to be awarded to the ERs' have been resolved, the ERs' counsel must also send an agreed proposed order to the Court at Horan_Orders@txnd.uscourts.gov by **April 29, 2024**.

If the parties do not reach an agreement as to the amount of attorneys' fees and costs to be awarded, the ERs' counsel must, by no later than **May 6, 2024**, file an application for attorneys' fees and costs that is accompanied by supporting evidence establishing the amount of the reasonable attorneys' fees (as described above) to be awarded under Rules 37(b)(2)(C). The fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002).

If the ERs files an application, Quantas must file a response by Wednesday, **May 28, 2024**, and Defendants must file any reply by **June 11, 2024**.

**Conclusion**

For the reasons and to the extent explained above, the Court grants in part and denies in part the ERs' Emergency Motion for Sanctions [Dkt. No. 66].

SO ORDERED.

DATED: April 8, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE